**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Dec 01 2014, 10:22 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MARK SMALL**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ELLEN H. MEILANDER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| RITCHIE HODGES, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 06A04-1406-PC-251 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE BOONE SUPERIOR COURT
The Honorable Rebecca S. McClure, Judge
Cause Nos. 06D02-1103-FD-206 and 06D02-1304-PC-203

**December 1, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Chief Judge**

**Case Summary**

In 2012 Richie Hodges pled guilty to possession of child pornography and voyeurism and was ordered to serve four years on community-corrections home detention and a year-and-a-half suspended to probation. Throughout his sentence, Hodges was prohibited from possessing pornography or obscene matter, and he was repeatedly advised of this. Approximately one month after sentencing, Hodges' attorney—upon his client's request—went to the Lebanon Police Department and picked up the large collection of DVDs that had been confiscated by the police as part of the initial criminal investigation, and then delivered these to Hodges without reviewing them. Later, during a home visit, Hodges' probation officer saw a suspicious-looking DVD next to Hodges' television and confiscated the DVD collection, ultimately discovering that four of the DVDs contained pornography. The violation was reported, and at the hearing on the revocation of community-corrections placement, Hodges' attorney argued that Hodges did not *knowingly* possess the pornography. The trial court found that Hodges had violated the terms of his community-corrections placement and ordered him to serve the remainder of his executed sentence at the Department of Correction. At the probation-violation hearing, where Hodges was represented by a different attorney, the trial court found that Hodges had violated the terms of probation by possessing obscene matter.

After initiating a direct appeal of both the community-corrections revocation and the probation revocation, Hodges filed a post-conviction petition, requesting that this Court dismiss his appeal without prejudice in order to allow him to pursue post-conviction relief. *See Hodges v. State*, 997 N.E.2d 419 (Ind. Ct. App. 2013). Hodges alleged in his post-

2

conviction petition that he had received ineffective assistance of counsel by his first attorney. The trial court denied his petition, and Hodges now appeals the revocation of both his community-corrections placement and probation and the denial of post-conviction relief. Specifically, Hodges argues that the evidence is insufficient to establish that he was in possession of pornography, and that the trial court abused its discretion when it denied him post-conviction relief. Because we find the evidence is sufficient to support the revocation of Hodges' probation—the direct appeal issue—and because we find no merit to Hodges' claim of ineffective assistance of counsel–the post-conviction issue—we affirm.

### Facts and Procedural History

In 2011 Hodges was charged with three counts of Class D felony possession of child pornography and one count of Class D felony voyeurism. The Lebanon Police Department seized over 2000 DVD/CDs, two computer hard drives, a mobile phone, and several other items from Hodges' bedroom. Hodges hired attorney and former judge James Detamore (Attorney Detamore) to represent him in the criminal proceedings. In May 2012 Hodges pled guilty as charged to all four counts, and the trial court ultimately imposed an aggregate sentence of five-and-a-half years, with the first four years to be served on community corrections home detention and the final year-and-a-half to be suspended to probation.

Hodges' community-corrections placement required him to comply with all terms and conditions of home detention with electronic monitoring and to sign and initial all terms of the "Electronic Monitoring Program Contract." Comm. Corr. Tr. p. 3. Annette

3

Bowden, Director of Operations for Boone County Community Corrections, performed

Hodges' "pre-screen," an hour-and-a-half-long process described by Bowden as follows:

> He goes through the [Community Corrections] contract. I give him the opportunity to ask any questions. The handbook and other packets are sent to their home prior to that. They are to bring 'em in filled out. We answer questions. I go through and do an interview that talks about a little bit of everything. I go over the rules of the [Community Corrections] contract.

*Id.* at 39-40. Number 12 of the community-corrections contract reads: "I understand that I

am not to possess any pornography in any form." *Id.* at 45-46. Bowden discussed this

term with Hodges, and he did not ask her any questions about it. *See id.* at 40.

Greg Higbee, Field Officer for Boone County Community Corrections, performed

Hodges' initial "hook-up" and at that time reviewed "the basic rules that go along with

being on home detention." *Id.* at 53. Officer Higbee's recollection of this experience was

as follows:

> Q: So you went over specifically with Mr. Hodges that he was not to have any pornographic material as a term of his Community Corrections?
> [Officer Higbee]: Correct.
> Q: Did Mr. Hodges have any questions for you on that?
> [Officer Higbee]: The only question that I recall at the time was, and I believe it was his wife that was in the room that she asked the question and I believe it was about an R rated movie. They . . . wanted to know what our standing was as far as an R rated movie was concerned. And I . . . basically explained as long as it was not pornographic, rated X, an R rated movie I believe would be fine.
> Q: And did he . . . have an agreement with you on that, I mean did you . . . have him to understand what you had meant when you said that?
> [Officer Higbee]: I believe, they just both shook their heads –
> Q: Okay.
> [Officer Higbee]: -- up and down.
> Q: So there was no further follow up or any questions about any . . . specific items?
> [Officer Higbee]: No sir.
> Q: . . . [D]id Mr. Hodges ever bring any items to you, to your attention asking if this would quality as pornographic material or anything of that nature?

[Officer Higbee]: No sir. Not that I recall.

*Id*. at 53-54.

Michael Nance, Hodges' supervising probation officer, also went over the terms of probation with Hodges, had him initial all of the terms, and asked him if he had any questions about any of the terms. Prob. Tr. p. 6. Term 32 provides: "You shall abide by all conditions of probation as set forth on the Indiana Recommended Special Probation Conditions for Adult Sex Offenders filed simultaneously with these terms of probation." Appellant's D. A. App. p. 155. Nance testified that term number nine of the probation conditions for adult sex offenders (Term 9) provides in relevant part as follows: "You shall not possess obscene matter as defined by Indiana Code 35-49-2-1 or child pornography as defined by 18 United States Code 2256(8), including but not limited to videos, magazines, books, DVDs and material downloaded from the Internet. . . ." Prob. Tr. p. 7-8.

After sentencing, Attorney Detamore reviewed the terms and conditions of home detention and probation with Hodges—including the provision stating that he was not to possess pornography—and Hodges did not ask his attorney any questions about that provision. P-C Tr. p. 26-27.

Approximately one month after sentencing and while he was serving the home-detention portion of his sentence, Hodges asked for the return of the property that had been confiscated during the criminal investigation. *See id*. at 25. In August 2012 Attorney Detamore, who had represented Hodges from the time he was charged through sentencing and thereafter, collected the property from the Lebanon Police Department and delivered it to the house where Hodges was residing, where it was placed temporarily in the garage.

Attorney Detamore did not review any of the discs before handing them over to Hodges. Thereafter, Hodges moved the DVD collection to his bedroom. Hodges took a hard drive and mobile phone in to Probation Officer Nance to have them reviewed for impermissible material. *See id*. at 31. Hodges intended to take the disc collection to Probation Officer Nance and have it checked for any impermissible material—as he had done with his hard drive and mobile phone—but claimed variously that he "didn't want to rush all that stuff [he] got back to [] them, 'cause it's overwhelming, so [he] was doin' a little at a time," and that he didn't have "the time to haul all that stuff in a little car up there." Comm. Corr. Tr. p. 104, P-C Tr. p. 45. Hodges also claimed, however, that he had gone through the collection himself and had thrown away forty DVDs that contained pornography. Comm. Corr. Tr. p. 93-94, 104.

Because Hodges' hard drive contained some impermissible material, Probation Officer Nance went to Hodges' residence on September 12, 2012, "to make sure he did not have any further materials which he had not submitted . . . which would be contrary to the terms of his release." *Id*. at 12. Probation Officer Nance observed a disc next to the television with a paper label that read "Whacker." *Id*. at 13. Hodges' brother, with whom Hodges was living, later testified that he had placed this disc next to Hodges' television after coming across it in his garage. Comm. Corr. Tr. p. 61.

Probation Officer Nance and Officer Higbee confiscated the entire disc collection. After reviewing the collection, Probation Officer Nance determined that four of the confiscated discs—"Whacker," "SC 5-6," "MS 100," and "P DOCS"—contained

6

pornographic material, and he reported the community-corrections/probation violations. *Id*. at 13-19. Two of these discs are described by the trial court as follows:

> The P DOCS DVD . . . contain[s] a very graphic sex scene in which a man and woman are engaged in sexual intercourse after purportedly enhancing their senses by smoking marijuana. The story line in 'Whacker[]' involves a voyeur watching the actions of a man and three women as they engage in various acts of sexual stimulation, which activity is clearly intended to appeal to the viewer's prurient sexual interest. The voyeur then kidnaps two of the women individually and tortures each of them.

Appellant's App. p. 98.

Five days later, Probation Officer Nance returned with Lebanon police to arrest Hodges. Hodges said "he was upset because he had gone through his . . . DVD collection after it had been returned from the police and thrown away . . . approximately fifty (50) DVDs, and he couldn't believe he was being violated . . . after only keeping four [] to five []." Comm. Corr. Tr. p. 19-20. Hodges denies saying this; instead, he claims he said "that [he] had thrown away forty [] DVDs that contained pornography and if . . . I was gonna keep anything it wouldn't have been that one." *Id*. at 104. Hodges also testified that although he had downloaded and burned the content onto these DVDs, he has actually never watched them; however, he knows that they do not contain "hard core pornography" because they "had writing on [them] in some form or another, either on the CD, or the DVD or a little piece of paper in the cover," and according to his system, any DVD-R with nothing written on it with a Sharpie marker was immediately identifiable as pornography. *Id*. at 91-93, 113.

Attorney Detamore, who had never withdrawn his appearance in Hodges' case, represented him at the community-corrections hearing. Attorney Detamore viewed the

7

four DVDs that resulted in Hodges' violation, and had "no doubt in [his] mind that . . . the Judge would find the materials to be pornographic." P-C Tr. p. 78. Hodges later testified that before the community-corrections hearing, and "[a]fter five hours of arguing," he still didn't agree with Attorney Detamore's interpretation of what constituted pornography. *Id.* at 37. In fact, Hodges maintains that he has his own definition of pornography, which is "[a]nything that has penetration . . . the penis going into the vagina in full view." *Id.* at 27-28. He described "Whacker" as a "B drive-in movie. About zombies." *Id.* at 57. Attorney Detamore did not recall having any dispute with Hodges about what constituted pornography. *Id.* at 69.

In any event, Attorney Detamore's strategy at the community-corrections hearing was to argue that Hodges "did not knowingly possess pornographic material." *Id.* at 78. Regarding his consent to this strategy, Hodges testified as follows:

> Q: Sir you stated that you got into a five (5) hour argument with your attorney prior to the hearing?
> [Hodges]: Well it was a discussion.
> Q: Why did you continue letting him represent you at that point if you did not agree with his opinion?
> [Hodges]: I don't know. I, you know. I'm not an attorney so, you know, I just . . .
> Q: So despite the fact that you knew what he considered pornography, and that you had a different opinion of that, you allowed him to represent you in the hearing when your liberty's at stake, is that correct?
> [Hodges]: Yeah.
> Q: Fair to say then you acquiesced to his belief or his strategy on how to proceed, by allowing him to represent you knowing full well what he was going to argue to the Judge? You acquiesced to that.
> [Hodges]: Well I . . . I wasn't in total agreement with him, no.
> Q: But you knew what he was going to argue and yet you still appeared and you didn't ask the Judge for a different attorney and you didn't fire him either did you?
> [Hodges]: No.

8

> Q: And yet he was a private hire. You could have hired another attorney, correct?
> [Hodges]: Well, I could've.
> Q: Why didn't you?
> [Hodges]: I . . . I don't know how to answer that question.

*Id*. at 46-47. Following the community-corrections hearing, the trial court found that "P

DOCS" and "Whacker" contained "depictions well beyond R-rated material," and also

found that Hodges' testimony that he did not know what was contained on any of the four

DVDs not credible. *See* Appellant's App. p. 9. The trial court concluded that the State had

proven by a preponderance of the evidence that Hodges violated a term of his community-

corrections placement by knowingly possessing pornography. *See id.*

A probation-revocation hearing was held approximately four months later. Attorney

Detamore did not represent Hodges at this hearing; rather, he had hired new counsel. At

this hearing, the parties agreed to incorporate into evidence the testimony heard and

evidence admitted at the community-corrections hearing. *Id*. at 11. Hodges' argument at

the probation-revocation hearing—where he was represented by a different attorney than

at the community-corrections hearing—was "that the term of probation he was alleged to

have violated is impermissibly vague and that his due process rights were therefore violated

in that Hodges could not have known the behavior precluded by the term of probation at

issue." *Id*. at 12. The trial court nonetheless concluded that the State had proven by a

preponderance of the evidence that Hodges violated term nine of the Indiana

Recommended Special Probation Conditions for Adult Sex Offenders by possessing

9

obscene matter as defined by Indiana Code section 35-49-2-1, and that term nine is not impermissibly vague. *See id*. at 20.

Thereafter, Hodges initiated an appeal of his probation revocation and then received permission from this Court to dismiss that appeal without prejudice in order to file a petition for post-conviction relief. In his post-conviction petition, Hodges alleged that he received ineffective assistance of counsel[1] at the community-corrections hearing because "Hodges was not consulted sufficiently by counsel" before the hearing, and because "Counsel made a statement on the record inconsistent with Hodges' specific instructions as to the ultimate fact—whether items alleged to be pornography were pornography." *Id*. at 28. The post-conviction court granted the State's motion to dismiss the petition, concluding that since Hodges was challenging neither his conviction nor his sentence— only his change in placement—then his claim did not fall under the purview of the post-conviction rules. Hodges appealed, and this Court reversed and remanded, holding that Hodges' allegation was a claim that his conditional release was unlawfully revoked, which did fall within the purview of Post-Conviction Rule 1(a)(5). *See Hodges*, 997 N.E.2d at 419.

Thereafter, Hodges sought to add a third allegation to his post-conviction petition: "Trial counsel had a duty to examine any materials returned to Hodges or a duty to warn Hodges that any such materials could constitute a violation of the terms and conditions either of Community Corrections or probation." Appellant's App. p. 76. The State

---

[1] Actually, Hodges' counsel wrote in the original petition on March 28, 2013, that Hodges was provided "adequate and effective assistance of counsel" in violation of his constitutional rights. Appellant's App. p. 112. The State filed its response to Hodges' petition, "admitting that Hodges received 'adequate and effective' assistance of counsel" but denying any violation of Hodges' constitutional rights. *Id*. at 28.

objected to the new allegation on the grounds that it did not fall within the Post-Conviction Rules, but appeared, instead, to be a civil matter. The post-conviction court sustained the objection, but allowed Hodges to make an offer of proof. Ultimately, however, the court concluded, as a matter of law, that the remedy afforded by Post-Conviction Rule 1 is "not available for actions of counsel after the services of counsel relating to a pending allegation and/or hearing thereon have concluded but prior to counsel's filing his withdrawal of appearance with the Court." *Id.* at 48g. Moreover, the court wrote, even if the third allegation did fall within the Post-Conviction Rules, it failed on the merits, because Attorney Detamore "had no duty to examine the items returned and was under no duty to warn Hodges of that which [he] already knew." *Id.* at 48h.

Hodges now appeals from the revocation of his community-corrections placement/probation and the denial of post-conviction relief.

### Discussion and Decision

### I. Sufficiency of Evidence

When reviewing the sufficiency of the evidence to support a probation revocation, we consider only the evidence most favorable to the judgment without reweighing the evidence or judging witnesses' credibility. *Figures v. State*, 920 N.E.2d 267, 272 (Ind. Ct. App. 2010). A probation-revocation hearing is civil in nature, and the State's burden is to prove the alleged violations by a preponderance of the evidence. *Id.*; *see also* Ind. Code § 35-38-2-3 ("[T]he State must prove the [probation] violation by a preponderance of the evidence."). "If there is substantial evidence of probative value to support the trial court's conclusion that a defendant has violated any terms of probation, we will affirm its decision

11

to revoke probation." *Figures*, 920 N.E.2d at 272 (quoting *Cox v. State*, 706 N.E.2d 547, 551 (Ind. 1999)).

Hodges argues that because he was not given adequate notice as to what constituted "pornography," his possession of pornography was neither knowing nor intentional, and, therefore, the evidence is insufficient to support the revocation of his community-corrections placement and probation. But he did not raise any vagueness challenge at the community-corrections hearing; instead, Attorney Detamore argued that Hodges did not *knowingly* possess pornography. This was a strategic decision based on the fact that after viewing the DVDs, Attorney Detamore "felt that any person, especially the Judge . . . would find them to be pornography." P-C Tr. p. 72. A defendant waives a claim—including a constitutional claim—when he raises it for the first time on appeal after failing to raise it in the trial court. *See*, *e.g.*, *Stewart v. State*, 945 N.E.2d 1277, 1288 (Ind. Ct. App. 2011), *trans. denied*. Because Hodges is raising this vagueness claim for the first time on appeal, we find that he has waived the claim.[2]

At Hodges' probation-revocation hearing, his counsel did argue vagueness but did not make a clear distinction between pornography—the term used in the community-corrections contract—and obscene matter. Term 32 of Hodges' probation contract reads: "You shall abide by all conditions of probation as set forth on the Indiana Recommended Special Probation Conditions for Adult Sex Offenders filed simultaneously with these

---

[2] We acknowledge that Hodges is also arguing ineffective assistance of counsel in this appeal, but not for this issue (i.e., the failure to argue vagueness at the community-corrections hearing). Instead, Hodges argues that Attorney Detamore was ineffective for failing to review the DVDs or discuss with Hodges whether the possession of those discs would be a violation of the terms of community corrections or probation. In any event, as the trial court found, the material meets the definition of obscene matter as defined by the Indiana Code and thus constitutes pornography by any definition.

terms of probation." Appellant's D. A. App. p. 155. Term 9 of the probation conditions for adult sex offenders provides in relevant part as follows: "You shall not possess obscene matter as defined by Indiana Code 35-49-2-1 or child pornography as defined by 18 United States Code 2256(8), including but not limited to videos, magazines, books, DVDs and material downloaded from the Internet. . . ." Prob. Tr. p. 7-8.

Indiana Code section 35-49-2-1 states:

A matter or performance is obscene for the purposes of this article if:

(1) the average person, applying contemporary community standards, finds that the dominant theme of the matter or performance, taken as a whole, appeals to the prurient interest in sex;
(2) the matter or performance depicts or describes, in a patently offensive way, sexual conduct; and
(3) the matter or performance, taken as a whole, lacks serious literary, artistic, political, or scientific value.

Ind. Code § 35-49-2-1.

The State contends that Hodges is barred from raising a vagueness challenge to Term 9, because he cannot wait until after he has violated a term of his probation to collaterally challenge that term. *See Schlichter v. State*, 779 N.E.2d 1155, 1157 (Ind. 2002) (holding that defendant cannot collaterally challenge the propriety of consecutive sentences on appeal from his probation revocation); *Montgomery v. State*, 878 N.E.2d 262, 267 (Ind. Ct. App. 2007) (where defendant never attempted to appeal validity of probation condition when it was imposed, his challenge to its validity several years later, after he was alleged to have violated it, was an impermissible collateral attack on a final judgment). We agree that the time to raise this vagueness challenge would have been on direct appeal of his sentence. *See Schlichter*, 779 N.E.2d at 1156 ("We hold that Schlichter may not

13

collaterally challenge his sentence on an appeal from his probation revocation. Schlichter's options were to appeal his sentence when imposed or challenge it in a post-conviction proceeding."). Moreover, Hodges in his appellate brief advances no cogent arguments in support of the contention that the probation term prohibiting possession of *obscene matter* is too vague. *See* Ind. App. Rule 46(A)(8)(a) ("The argument must contain the contentions of the appellant on the issues presented, supported by cogent reasoning."). Indeed, in support of his argument that the prohibition on possessing *pornography* is too vague, Hodges cites a case in which another panel of this Court found a probation condition prohibiting "pornographic or sexually explicit materials" too vague, and remanded to the trial court, "strongly encourag[ing]" the trial court on remand to employ the definition of "obscene matter" found in Indiana Code section 35-49-2-1. *See McVey v. State*, 863 N.E.2d 434, 448 (Ind. Ct. App. 2007), *reh'g denied*, *trans. denied*. We decline, therefore, to address any vagueness challenge to Term 9, and proceed to the sufficiency issue.

Here, the trial court found that the State had proven by a preponderance of the evidence that Hodges violated Term 9. In support of this conclusion, the trial court—having reviewed the DVDs identified by Probation Officer Nance as containing "obscene/pornographic materials"—discussed a particularly graphic sex scene in "P DOCS" and the subject matter of "Whacker" as a whole, finding that these two DVDs contained "material well beyond that classified as R-rated." Appellant's App. p. 15. The trial court wrote: "In light of the other testimony heard and evidence admitted, the Court does not find at all credible the Defendant's testimony that he did not know what was contained on any of the four [] discs admitted into evidence at his Change of Placement

14

Hearing." *Id*. at 18. The trial court also found significant that Hodges brought the DVD collection in from the garage to his bedroom; he never took his CD/DVD collection to community corrections or probation to have it reviewed (although he had taken in his hard drive and mobile phone)[3]; and Hodges' reaction to Probation Officer Nance's confiscation of his DVD collection was that he couldn't believe Probation Officer Nance was going to violate him for keeping "four or five" DVDs. *Id*. at 18. On appeal, we will not reweigh the evidence or judge the witnesses' credibility. *See Figures*, 920 N.E.2d at 272. We find that there was ample evidence to support the trial court's conclusion that Hodges violated Term 9.

As a final matter, we address Hodges' underdeveloped assertion that the trial court "never observed the entirety of any of the films in question." Appellant's Br. p. 28. Hodges does not argue that this rises to the level of reversible error; indeed, he does little beyond summarizing the obscenity test articulated in *Roth v. United States*, 354 U.S. 476, 489 (1957)—"whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest"—and quoting from a law-review article which argues that "allowing jurors to consider only a single scene

---

[3] From the trial court's probation-revocation order:

> 28. The Court did not find genuine the Defendant's excuse for not taking his DVDs and CD's to Community Corrections for review. Hodges testified at his Change of Placement hearing that he knew that Community Corrections and Probation were busy and that he chose not to take his collection to them for review because of the overwhelming task that a review would have imposed upon those departments. The Court heard no testimony that either Probation or Community Corrections ever suggested to the defendant that they would not be able to review his CD/DVD collection as he had earlier suggested.

Appellant's App. p. 16-17.

from a movie represents a return to the isolated-excerpt standard squarely rejected by the [United States Supreme] Court more than half a century ago in *Roth*."[4] Hodges also quotes from the trial-court orders from the community-corrections hearing and the probation-revocation hearing, in both of which the trial court states that the court "reviewed portions" of the four discs singled out by Probation Officer Nance. *Id.* at 29. However, Hodges did not raise this issue at any point during either the community-corrections hearing or the probation-revocation hearing.[5] Indeed, at the community-corrections hearing, the following exchange occurred:

> Prosecutor: . . . There were[,] I believe, . . . four (4) discs confiscated that were outlined in the . . . violation that [Probation Officer] Nance would be testifying to. I don't know if it's the Court's preference for us to play those videos in . . . the courtroom or . . . to submit those to the Court as . . . an exhibit and allow the Court to review those on their own. I'm not sure how procedurally the Court wants to proceed.
>
> The Court: Well again I think that becomes a Defense question, because the Defense would have an opportunity if they wished to ask some questions I suppose about the discs. Do you want them played in open court?
>
> [Attorney] Detamore: Your Honor, I think I would . . . not object if the Court wants to. I think I would prefer the Court, as long as the State stipulates that what is being shown to the Judge is what was shown to me by Michael Nance. Because what he showed to me was, and he has them marked as far as how many minutes in or how many markers or how many something, you know, into the various thing.
>
> The Court: Can we make a record to that effect, that what I –

---

[4] Clay Calvert et. al., *Judicial Erosion of Protection for Defendants in Obscenity Prosecutions?: When Courts Say, Literally, Enough Is Enough and When Internet Availability Does Not Mean Acceptance*, 1 HARV. J. SPORTS & ENT. L. 7, 13 (2010).

[5] Since the parties jointly agreed at the probation-revocation hearing to incorporate "the exhibits and all testimony from [the community-corrections] hearing" into the hearing, there was never a discussion about viewing the DVDs. However, Hodges certainly *could have* raised this issue at the probation-revocation hearing.

Prosecutor: Yes Your Honor.

The Court: -- what you are asking me to review is what [Attorney] Detamore has seen?

Prosecutor: That is correct Your Honor and I'll . . . even ask [Probation Officer] Nance that question when he takes the stand.

The Court: To identify those portions?

Prosecutor: To identify those things –

The Court: Alright.

Prosecutor: – and then ask him if he has in fact shown those to Defense Counsel.

The Court: So then your request would be that the Court review those in chambers at the conclusion of the hearing?

[Attorney] Detamore: Yes Your Honor.

The Court: Alright. The Court will do so.

Comm. Corr. Tr. p. 8-9. We find that Hodges has waived this issue both by failing to raise it at both hearings before the trial court and by failing to present any cogent argument on appeal that viewing the materials in their entirety would lead to a conclusion other than that drawn by Probation Officer Nance and ultimately the trial court—that the DVDs were obscene matter in violation of Term 9.[6]

---

[6] As articulated by the State:

Tellingly, neither at any point during the various proceedings in the trial court nor in his brief on appeal has [Hodges] ever pointed a court to any other parts of the DVDs in question that would lead to a different conclusion or even made any argument that there is anything present anywhere in any of the films that would or should remove them from the definition of obscene matter. Petitioner has never argued to the court that watching the films in their entirety would create a different impression of their purpose or value or that the portions highlighted by [Probation] Officer Nance are somehow unrepresentative of the work as a whole. [Hodges] has not done this because there is no argument to be made along those lines.

## II. Ineffective Assistance of Counsel

Last, Hodges argues that the trial court erred when it denied his request for post-conviction relief by finding that Attorney Detamore owed no duty to Hodges and that there was no breach even if such duty existed. In particular, Hodges asserts that Attorney Detamore was ineffective for violating Hodges' Sixth Amendment right to counsel by returning Hodges' DVD collection to him without first reviewing the contents or consulting with Hodges as to whether he could possess them without being in violation of community corrections or probation.[7]

A petitioner who has been denied post-conviction relief faces a rigorous standard of review. *Dewitt v. State*, 755 N.E.2d 167, 169 (Ind. 2001). As such, the petitioner must convince the court on review that the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court. *Id.* at 170. Stated differently, "[t]his Court will disturb a post-conviction court's decision as being contrary to law only where the evidence is without conflict and leads to but one conclusion,

---

Appellee's Br. p. 25.

[7] In his initial petition for post-conviction relief, Hodges also asserted that he was not consulted sufficiently by counsel before the community-corrections hearing, and that Attorney Detamore "made a statement on the record inconsistent with Hodges' specific instructions as to the ultimate fact—whether items alleged to be 'pornography' were 'pornography.'" Appellant's App. p. 112. Thereafter, in his amended petition for post-conviction relief, Hodges added this third contention—that Attorney Detamore had a duty to examine any materials returned to Hodges or a duty to warn him that possession of such materials could constitute a violation of his community-corrections contract or probation. *See id.* at 76. On appeal from the denial of post-conviction relief, only this third contention is raised.

We note that Hodges also asserts a "law of the case" argument. Specifically, Hodges argues in his brief that "the trial court's decision [to dismiss his post-conviction petition] violates the law of the case" because of the trial court's previous dismissal of his initial post-conviction petition, a result reversed by another panel of this Court in *Hodges*, 997 N.E.2d at 419. Appellant's Br. p. 32. But Hodges' third contention, as discussed above, was not included in his initial post-conviction petition and therefore was not previously ruled on by either the post-conviction or appellate court. It is unclear to us why Hodges would argue that one of his own issues is precluded from appellate review.

18

and the post-conviction court has reached the opposite conclusion." *Id.* (quoting *Miller v. State*, 702 N.E.2d 1053, 1058 (Ind. 1998)). The reviewing court accepts the post-conviction court's findings of fact unless clearly erroneous. *Id.* Moreover, this Court considers only the probative evidence and all reasonable inferences therefrom that support the post-conviction court's determination and will not reweigh the evidence. *Bigler v. State*, 732 N.E.2d 191, 194 (Ind. Ct. App. 2000), *trans. denied.*

The post-conviction court "dismisse[d] outright as failing to state a claim upon which post-conviction relief can be granted" Hodges' ineffective-assistance-of-counsel claim. Appellant's App. p. 48g. The court went on to conclude that even assuming *arguendo* there is a basis for relief under Indiana Post-Conviction Rule 1, Hodges failed to show that the actions of Attorney Detamore constituted deficient performance giving rise to a viable ineffective-assistance-of-counsel claim. In support of this conclusion, the post-conviction court found:

> 83. The Court heard no evidence supporting a finding of such a duty in contract or otherwise. Similarly, the Court found no legal authority, in common law or statutory law, establishing a duty to warn a client for whom services have been completed that the client's actions in the future may subject him to further sanction by the State.
>
> 84. Following sentencing hearing, [Attorney] Detamore reviewed with [Hodges] the terms of his Community-corrections placement and the terms of probation. This occurred prior to [Attorney] Detamore returning confiscated items to [Hodges'] residence.
>
> 85. [Attorney] Detamore placed items he received from the Lebanon Police Department in the garage of the home in which [] Hodges was residing. It was Hodges who chose soon thereafter to move those items into his bedroom.
>
> 86. Although Hodges asked the assistance of [Probation Officer] Nance in reviewing certain items that had been returned to him, never once did he ask [Attorney] Detamore to review any of the items returned to him.

19

87. The Court concludes, as a matter of law, that [Attorney] Detamore had no duty to examine the items returned and was under no duty to warn Hodges of that which Hodges already knew.

Appellant's App. p. 48g-h.

The State argues that Hodges waived this claim by failing to make any cogent argument "as to how the post-conviction rules provide a remedy for something that occurred after one legal proceeding was concluded and before any other legal proceedings were initiated." Appellee's Br. p. 31; *see* Ind. App. Rule 46(A)(8)(a). The State argues further that there is no Sixth Amendment right to counsel in this context and, even if there were, Hodges has failed to show that Attorney Detamore's performance fell below an objective standard of reasonableness, and that Hodges was prejudiced as a result. We agree that he had no duty to review these DVDs. Even if Attorney Detamore had such a duty and sua sponte decided to review the hundreds of DVDs in Hodges' collection—a task Hodges never asked him to perform—and had encountered what he believed to be pornography, in light of the fact that Hodges vehemently disagreed with Attorney Detamore as to what constituted "pornography," there is no reason to believe that Hodges would have relied on that information anyway. In conclusion, we certainly cannot say that the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court. *See Dewitt*, 755 N.E.2d 167. Accordingly, we affirm the trial court.

Affirmed.

FRIEDLANDER, J., and MAY, J., concur.